STEVENSON, J.
Mark Ellis pled nolo contendere to felony DUI, reserving the right to appeal the trial court’s denial of his motion to suppress. On appeal, Ellis contends that the stop of his vehicle on the evening of March 7, 1998, was not justified. We disagree and affirm the decision of the trial court.
*768 In order to effect a valid stop for DUI, the officer need only have a “founded suspicion” of criminal activity.
[[Image here]]
The courts of this state have recognized that a legitimate concern for the safety of the motoring public can warrant a brief investigatory stop to determine whether a driver is ill, tired, or driving under the influence in situations less suspicious than that required for other types of criminal behavior.
State, Department of Highway Safety & Motor Vehicles v. DeShong, 603 So.2d 1349, 1352 (Fla. 2d DCA 1992); see also State v. Davidson, 744 So.2d 1180 (Fla. 2d DCA 1999)(quoting the language from DeShong ).[1]
At the hearings held on Ellis’ motion to suppress, two witnesses were called: John Apell, a Ft. Lauderdale police officer who was off-duty that night, and Officer Adam Reisner, the Boca Raton officer who effected the stop. Apell stated that he was driving on Glades Road, on his way home, when he saw a vehicle coming up at an excessive speed. Apell testified that he pulled over, believing the car was going to rear-end him. Then, the car braked, backed up, and approached his car two or three more times. Ultimately, the car passed Apell and stopped at a traffic light. According to Apell, while stopped at the light, the driver of the car got out, “circling his arms in a rage” in the middle of the road. When the light turned green, the driver got back in the car and took off. Apell continued to follow, observing the car weaving and driving into the median. At this point, Apell called 911 from his cellular phone and identified himself as an off-duty Ft. Lauderdale police officer. Apell reported that he had observed an out-of-control car, possibly a DUI or medical problem, and provided dispatch with a description of his car and license plate number and that of the car he was following. Apell testified that he remained on the phone with dispatch until the Boca Raton police arrived, confirming that the officer was following the right car.
Officer Reisner, a Boca Raton officer, testified that he received a call from dispatch that someone was following a car that was driving erratically and at a high rate of speed. According to Reisner, when he arrived, he observed two cars; on his arrival, the one following backed off. Reisner testified that he followed the remaining car for ten or fifteen blocks, turning on his lights and siren. During this time, Reisner observed the car almost hit the median and, then, swerve sharply, leaving its lane of travel. When the car stopped at a light, Reisner attempted to approach. Just as the officer reached the rear quarter panel of the car, the light turned green and the car took off again. Reisner returned to his car and continued to follow. Finally, at Delray Boulevard, the driver made a U-turn and pulled over.
Ellis contends that, in assessing whether the circumstances gave rise to a “founded suspicion,” only those observations personally made by Officer Reisner could be considered because the “fellow officer” rule would not apply to Apell, an off-duty officer outside his jurisdiction and not in hot pursuit. Apell need not have been a “fellow officer,” however, for the observations that he relayed to 911 to be considered. Under the circumstances, we find that Apell was a citizen-informant; the information he gave to 911 was, therefore, properly taken into consideration by Officer Reisner in making his “reasonable *769 suspicion” determination.[2] See, e.g., State v. Evans, 692 So.2d 216 (Fla. 4th DCA 1997). The sum of the facts relayed by Apell to 911 and Reisner’s own observations clearly exceed what was necessary to give rise to a “founded suspicion.”
Even if we were to consider only the observations personally made by Officer Reisner, we would find that the stop was valid. Reisner followed Ellis for ten to fifteen blocks with his lights and siren on with no .indication that Ellis was aware of his presence. Reisner observed Ellis almost hit the median and over-correct to such a degree that he left his lane of travel. These circumstances were sufficient to give rise to a “founded suspicion” that Ellis was impaired. See, e.g., Roberts v. State, 732 So.2d 1127 (Fla. 4th DCA), review denied, 743 So.2d 510 (Fla.1999); Davidson, supra.
AFFIRMED.
GROSS, J., and BAILEY, JENNIFER D., Associate Judge, concur.

. Notwithstanding language in Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), that "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred,” we do not believe that the United States Supreme Court intended to changed the long-standing standard of "founded" or "reasonable” suspicion to initiate a Terry stop.

. See § 901.15(5), Fla. Stat. (1999).