District Court of Appeal of Florida,
Fourth District.

Nov. 23, 2016.

Carey Haughwout, Public Defender, and Virginia Murphy, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

ON CONFESSION OF ERROR

PER CURIAM.

On appeal, appellant argues that the trial court erred in denying his motion for judgment of dismissal. Appellee confesses error, and does not oppose reversal of the judgment and disposition. After reviewing the record, we agree that the trial court erred, and reverse appellant's judgment and disposition and remand for the trial court to enter an order granting appellant's motion for judgment of dismissal.

*Reversed and remanded.*

MAY, DAMOORGIAN and CONNER, JJ., concur.

STATE of Florida, DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Petitioner,

v.

Gregory WALSH, Respondent.

No. 1D16–511.

District Court of Appeal of Florida,
First District.

Nov. 28, 2016.

Stephen D. Hurm, General Counsel, and Nicholas A. Merlin, Assistant General Counsel, Department of Highway Safety & Motor Vehicles, Tallahassee, for Petitioner.

Lee Meadows of The Law Offices of Lee Meadows, Tallahassee, for Respondent.

MAKAR, J.

In 2009, Gregory T. Walsh's driver's license was permanently revoked because of his DUI manslaughter conviction. Five years later, after his release from prison, he sought early reinstatement of his driving privileges, petitioning for a "hardship license" under section 322.271, Florida Statutes. During the administrative hearing on his petition, he admitted to drinking alcohol in the past five years, including beer in the previous three months. Understandably, the hearing officer denied Walsh's request for reinstatement, noting that Walsh's recent imbibing violated the statutory requirement that he must be "drug-free for at least 5 years prior" to a

hearing on his application. § 322.271(4)(a)3., Fla. Stat. (2014).

In the circuit court, Walsh's initial certiorari petition complained only that the hearing officer's order failed to cite the relevant statute, but it evolved into a broad attack on various aspects of the reinstatement process, the focal point of which was the legal question of whether alcohol is a "drug" for purpose of determining whether Walsh had been "drug-free" for five years.

That question had been answered long ago by our sibling court in *State, Department of Highway Safety & Motor Vehicles v. Abbey*, 745 So.2d 1024 (Fla. 2d DCA 1999), which held that the Department's interpretation was a reasonable one, holding that "drug-free" included "abstinence from the same mind-altering substances, i.e. drugs, that can result in an arrest for DUI" such as alcohol. *Id.* at 1025. Indeed, in light of statutes and administrative rulings that deem alcohol to be a drug for purposes of drug-free workplaces and related contexts, the Second District concluded that "any other interpretation would be unreasonable." *Id. Abbey* made the common sense point that "[w]hen the legislature announced that an applicant must be 'drug-free,' it did not intend the applicant to refrain from the use of aspirin." *Id.* Instead, the statute was to be "liberally construed to the end that the greatest force and effect may be given to its provisions for the promotion of public safety." *Id.* (quoting § 322.42, Fla. Stat. (1997)); *see also* § 322.263(1), Fla. Stat. (1997) (legislative intent was to "provide maximum safety for all persons who travel or otherwise use the public highways of the state").

▮ *Abbey* is a "red cow" case,[1] one that is virtually identical factually and procedurally to this one. Abbey's license was permanently revoked for a fifth DUI; he sought reinstatement; he was denied because he had consumed alcohol in the past year; the circuit court granted him relief, concluding that abstinence from alcohol was not required under the " 'drug-free' for five years" portion of the statute; and the Second District granted relief to the Department on its petition. *Abbey*, 745 So.2d 1024, 1024–26. Despite *Abbey's* direct application to Walsh's situation, the trial court viewed it as a "newsflash" (from fifteen years ago) that the Department should adopt an administrative rule to avoid piecemeal litigation about what's a "drug" for purposes of the license statute. Rather than follow *Abbey*, the trial court ruled that the Department must engage in formal rulemaking before enforcing the "drug-free" provision of the reinstatement law, something that *Abbey* did not compel. This failure to follow *Abbey* was a profound error, amounting to a clear departure from the essential requirements of law because "in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." *Pardo v. State*, 596 So.2d 665, 666 (Fla.1992). The circuit court did not engage in simple legal error by, for example, applying the correct law incorrectly; rather, it failed to follow binding precedent of a sibling court, thereby providing the jurisdictional basis for our review. *See Nader v. Fla. Dep't of High. Saf. & Motor Vehs.*, 87 So.3d 712, 726 (Fla.2012) (second-tier certiorari review not precluded "simply because a prior decision of another district court of appeal analyzed the controlling statute. Such a result would treat case law interpreting a statute as more authoritative than the stat-

---

1. *See Corn v. City of Lauderdale Lakes,* 997 F.2d 1369, 1390 (11th Cir.1993) ("The term 'red cow' is used in some legal circles, particularly in Florida, to describe a case that is directly on point, a commanding precedent.").

ute itself—a proposition that is not supported by our precedent."). We note that the supreme court in *Nader* held that "a district court may exercise its discretion to grant certiorari review of a circuit court decision reviewing an administrative order, so long as the decision under review violates a clearly established principle of law resulting in a miscarriage of justice, *even if the circuit court decision was based on precedent from another district.*" *Id.* at 727 (emphasis added). If second-tier certiorari jurisdiction can exist where a circuit court applies precedent from another district (as the emphasized language reflects), we draw confidence that jurisdiction may exist where a circuit court *fails* to apply binding precedent from another district under *Pardo.*

■ Unlike the trial court, we are not required to adopt the Second District's decision in *Abbey,* but we do so because it reflects the proper interpretation of the statute. To hold that "drug-free" excludes alcohol would ignore the common understanding that alcohol is a drug, the deference due to the Department's reasonable interpretation of the broad phrase "drug-free," and the Legislature's intent, as clearly expressed in the statute. As noted in *Abbey,* the Department's view that alcohol is a drug for purposes of determining the scope of what "drug-free" means under section 322.271(4) is wholly reasonable. Of note, that section relates only to a person "whose driving privilege has been permanently revoked because he or she has been convicted of DUI manslaughter," and who has "no prior convictions for DUI-related offenses." It would be an odd result—and a serious error—if persons convicted of manslaughter due to alcohol consumption could have their licenses reinstated despite their continued use of the very substance that caused another's needless death.

The remaining question is whether a "miscarriage of justice" has resulted. In the ordinary meaning of the phrase, it most certainly has: the Department has been ordered to issue a hardship license to which Walsh is not entitled; his prior exercise of driving privileges resulted in the death of another due to his DUI, yet he did not abstain from alcohol use for the requisite five years to become eligible. It is serious error to put a license in his hands, creating the very risk of harm to others that the statute clearly was enacted to prevent. This type of miscarriage of justice need not be systemic or broad; it can be as to a single person or entity, as the decision in *Abbey* itself reflects. 745 So.2d at 1026 (granting the Department's petition, quashing the circuit court's order, and directing reinstatement of the "Department's denial of Abbey's application for a hardship license."); *see Vasques v. Mercury Cas. Co.,* 947 So.2d 1265, 1267 (Fla. 5th DCA 2007) ("We agree that the circuit court's decision affirming the judgment in favor of Mercury violated clearly established principles of Florida law resulting in a miscarriage of justice *for Vasques.*") (emphasis added). Absent correction now, the direct result of the trial court's order is a miscarriage of justice as to society, the Legislature's intent in restricting hardship licenses, and the protection of the public.

We appellate judges "must be able to correct serious errors resulting in a miscarriage of justice," *Nader,* 87 So.3d at 727, but are simultaneously cautioned that not every error is a "miscarriage of justice" sufficient to warrant the exercise of our power to review matters on second tier certiorari. *Allstate Ins. Co. v. Kaklamanos,* 843 So.2d 885, 889 (Fla.2003) (cautioning that a departure from the essential requirements of law requires more than legal error); *see also Futch v. Fla. Dep't of High. Saf. & Motor Vehs.,* 189 So.3d 131,

132 (Fla.2016) (concluding that no miscarriage of justice occurred on the unique facts of that case). It has been observed, however, that "the refusal to apply a governing precedent, for example, because the circuit court does not agree with it, would be an error serious enough to qualify for discretionary review by certiorari." Philip J. Padovano, *Florida Appellate Practice,* § 19:8 (2d ed. 2015) ("Likewise, the district court could grant certiorari if the circuit court failed to apply a controlling statute.") (citing cases). That is precisely the situation here. The trial judge refused to apply the governing precedent, *Abbey,* directly resulting in the issuance of an unauthorized license to a DUI manslaughter offender who has no right to exercise driving privileges at this time. That is enough to warrant the conclusion that a "miscarriage of justice" has occurred, even if the likelihood of another court committing a similar error in the future is speculative. Precedential value is an important factor in determining whether a miscarriage of justice is shown, but the result in this case is one that is manifestly unjust. As our supreme court has said, we have a degree of discretion at the margin in deciding whether a legal error is serious enough to warrant relief. *See Combs v. State,* 436 So.2d 93, 95–96 (Fla.1983) ("Since it is impossible to list all possible legal errors serious enough to constitute a departure from the essential requirements of law, the district courts must be allowed a large degree of discretion so that they may judge each case individually."). We conclude that this is one of those cases where the relief the Department seeks should be granted; indeed, it was granted in *Abbey* and should be granted here as well.

**2.** Determining whether we agree with *Abbey* is unnecessary for the disposition of this case. I would note that alcohol and controlled substances (commonly called "drugs") are differ-

PETITION GRANTED; DECISION QUASHED.

ROWE, J., concurs; BILBREY, J., dissents with opinion.

BILBREY, J., dissents.

I respectfully dissent. There is no question that the circuit court erred in concluding *State, Department of Highway Safety and Motor Vehicles v. Abbey,* 745 So.2d 1024 (Fla. 2d DCA 1999), was not binding upon it.[2] But this legal error does not constitute a miscarriage of justice, and therefore, second-tier certiorari review is not available to the Department.

Mere legal error is not a basis for granting second-tier certiorari review. *Custer Med. Ctr. v. United Auto. Ins. Co.,* 62 So.3d 1086, 1093 (Fla.2010). It is not the existence of error which matters, but the "seriousness of the error." *Combs v. State,* 436 So.2d 93, 95 (Fla.1983); *Ivey v. Allstate Ins. Co.,* 774 So.2d 679, 682 (Fla. 2000) (quoting *Stilson v. Allstate Ins. Co.,* 692 So.2d 979, 982–83 (Fla. 2d DCA 1997)). Thus, second-tier certiorari is intended to correct "an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice." *Haines City Cmty. Dev. v. Heggs,* 658 So.2d 523, 527 (Fla.1995) (quoting *Jones v. State,* 477 So.2d 566, 569 (Fla.1985) (Boyd, C.J., concurring specially)).

Admittedly, the concept of "miscarriage of justice" for purposes of granting certiorari relief under Florida law has not been defined. The Supreme Court has deliberately avoided enumerating errors which would constitute a miscarriage of justice.

ent under Florida's DUI laws, while *Abbey* put them in the same set. *See* §§ 316.193–.1934, Fla. Stat.

*See Combs,* 436 So.2d at 96; *Nader v. Dep't of Highway Safety & Motor Vehs.,* 87 So.3d 712, 726 (Fla.2012). But, it is clear that it is the rare case which warrants second-tier certiorari relief.

The majority mentions the recent decision *Futch v. Florida Department of Highway Safety and Motor Vehicles,* 189 So.3d 131 (Fla.2016). I would argue that *Futch* is instructive of my point. The facts of the case are as follows:

> During a traffic stop, Futch allegedly refused to submit to a blood-alcohol test. The Department of Highway Safety and Motor Vehicles ("DHSMV") suspended Futch's driver license for one year, effective March 15, 2013. Futch sought review of the driver license suspension. During the administrative review, the hearing officer refused to permit Futch's counsel to ask more than two questions of Futch's expert witness. The hearing officer subsequently upheld the suspension. On certiorari review of the administrative decision, the circuit court found that the hearing officer's actions denied Futch due process, and invalidated the suspension. On second-tier certiorari review of the circuit court's decision, the Fifth District agreed with the circuit court that the hearing officer violated Futch's due process by refusing to allow his expert to testify. However, the Fifth District held that the circuit court was required to remand the case back to DHSMV for another administrative hearing, and "that the circuit court misapplied the law when it directed DHSMV to set aside the suspension and reinstate Futch's driver's license."

*Id.* at 132. The Florida Supreme Court held in *Futch* that second-tier certiorari relief was improperly granted by the district court even though the circuit court applied the wrong law thereby granting an improper remedy. While legal error plainly had been committed by the circuit court, it obviously did not constitute a manifest injustice. *Id.* The instant case is analogous. No other circuit court will be bound by the erroneous decision of the circuit below should it remain standing. While it is true Respondent Walsh would be given a privilege to which he is not yet entitled should the circuit court's decision remain undisturbed, the injury that would be suffered by the Department in reinstating a single driver's license is not wide-ranging.

In *Futch,* the Florida Supreme Court reaffirmed that "appellate courts must exercise caution not to expand certiorari jurisdiction to review the correctness of the circuit court's decision." 189 So.3d at 132 (quoting *Nader,* 87 So.3d at 723); *see also Heggs,* 658 So.2d at 526. Indeed, the Florida Supreme Court "has cautioned the district courts to be prudent and deliberate when deciding to exercise this extraordinary power," and therefore second-tier certiorari jurisdiction should be invoked only when it is necessary to ensure "essential justice" for the parties and the public. *Ivey,* 774 So.2d at 682 (quoting *Stilson v. Allstate Ins. Co.,* 692 So.2d 979, 982–83 (Fla. 2d DCA 1997)). It seems to me that it is incumbent on the majority to articulate how the error of the circuit court in not applying *Abbey* was something more than simple legal error. Like Judge Altenbernd, I am concerned that the "flexibility" accorded to the miscarriage of justice standard—to the extent there is a standard—"may devour the rule of finality." *State v. Wilson,* 690 So.2d 1361, 1364 (Fla. 2d DCA 1997) (Altenbernd, J., dissenting).

As this court has said in *State v. Pietrasiuk,* 197 So.3d 640 (Fla. 1st DCA 2016), a denial of a writ of certiorari does not necessarily connote agreement with a circuit court's decision. It is obvious that the circuit court below did err in failing to find

*Abbey* controlling. But, an error below which would be correctable on direct appeal is not necessarily a basis for second-tier certiorari review. In my view, a district court should be circumspect in granting relief which is only intended for the rare case. At its core, the decision to grant second-tier certiorari relief represents a profound disagreement with the outcome of the circuit court case below. Although understandable, mere disagreement with the decision below is not a ground for conferring to ourselves second-tier certiorari jurisdiction. Therefore, I respectfully dissent from the grant of the petition.